**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA ex rel.** | ) | |
| **JAMES CURTIS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 07 C 489** |
| | ) | |
| **TERRY McCANN, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

In 2003, an Illinois jury convicted James Curtis of aggravated stalking, telephone

harassment, and violation of an order of protection. The trial court then sentenced him to

extended prison terms of ten years for aggravated stalking, six years for telephone harassment,

and six years for violation of an order of protection, to run concurrently. The charges against

Curtis arose from allegations he had repeatedly telephoned Deborah Chester, his former

girlfriend and the mother of his child, and sought her at her house, despite the protective order

she had obtained against him. Curtis was arrested at the site of a meeting he set up with Chester,

at which he was to exchange some jackets apparently taken during a break-in at her house two

days earlier for the chance to see his daughter.

Curtis has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Curtis alleges his constitutional rights were violated in that: (1) the evidence supporting his

conviction was not sufficient to establish guilt beyond a reasonable doubt; (2) the trial court

improperly and incorrectly answered a jury question about what Illinois's stalking statute requires, in the process directing a guilty verdict against him; (3) the trial court admitted testimony about prior consistent statements by Chester, in violation of Illinois's hearsay rule; (4) he was arrested unlawfully and denied a speedy trial; and (5) he was denied effective assistance of counsel at trial and on direct appeal, due in part to "conspiratorial actions" between his counsel, the state court, and the prosecution. For the following reasons, the Court denies Curtis's petition.

The Court also denies Curtis's motion to appoint counsel, as the issues in the case are not complicated, and Curtis has presented them adequately.

**Background**

Factual findings by the state court are presumed correct in a federal habeas corpus proceeding unless they are rebutted by clear and convincing evidence. *Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir. 2002); 28 U.S.C. § 2254(e)(1). Curtis does not appear to raise any dispute with the Illinois Appellate Court's factual findings, so the Court adopts the following account from the decision of that court in *People v. Curtis*, No. 1-03-1542 (Ill. App. Dec. 9, 2004).

At trial, Deborah Chester testified that she and Curtis had dated for over three years until she ended their relationship and he moved out of her home in March 2001. During their relationship, defendant worked for ADT Security, and ADT had installed a home security system at Chester's house. Their daughter, Jasmine Curtis, was born in January 2000.

The parties stipulated that on February 20, 2002, Curtis was found guilty of violation of an order of protection, under case number 2001-1448636. The parties further stipulated that on

2

February 28, 2002, Curtis was served in open court with an order of protection numbered 02-185064. The record reflects that this order of protection prohibited Curtis from, among other things, stalking Chester, contacting her by any means, and entering her house.

Chester also testified that on March 1, 2002, at 1:46 a.m., Curtis called her at home and told her that he had pled guilty and was "out." He also stated that "the next time he go [*sic*] back to jail, it would be for something more serious." After she hung up the telephone, Chester called the police. When Chester returned home from work on April 28, 2002, she noticed that her furniture had been slashed. She subsequently noticed that a set of keys belonging to her children's live-in babysitter, Jeneen Edwards, was missing, along with three leather jackets, jewelry, and some of Chester's court paperwork. She changed her locks shortly thereafter.

Chester testified that on April 30, 2002, between 9:30 and 10:00 a.m., she was home alone when Curtis called her and said that she had "24 hours to allow him to see his daughter, or he'll kill [Chester]." Chester testified that she was scared and immediately went to the police station to report the incident and stated that she "figured this man would come for me, and I was trying to figure out what we can do to help me." At approximately 3:00 p.m. that afternoon, Curtis called Chester again and told her that if she allowed him to see Jasmine, he would return the three jackets he had stolen from her house. Chester agreed to meet with him but did not designate a time and place for the meeting. She then called the police.

Chester testified that she arranged a plan with Detectives Jasica and Devries to allow her to designate a time and place for the meeting with Curtis. Curtis called again that afternoon and told Chester to meet him at the intersection of 95th and Lafayette Streets in fifteen minutes and she agreed to do so. Chester and the detectives drove to the designated area in separate cars.

Shortly after Chester parked on Lafayette, she saw Curtis exit a van on the other side of the street. Curtis crossed the street and started walking toward her. He waved at her and motioned for her to come to him. He carried a backpack but did not have the jackets with him. Chester remained in her car until he came closer to her and then placed her car in reverse, which was the sign to the detectives that Curtis was approaching. Chester then drove away from the scene.

Jeneen Edwards testified that on March 1, 2002, Curtis came to Chester's home at about 4:00 p.m. Edwards refused to open the door because of the order of protection. Curtis repeatedly asked where Chester was, but Edwards refused to give him that information and told Curtis that she was going to call the police. After speaking to the police, she noticed that Curtis had left, and she then saw him walking northbound on Wentworth Avenue. When the police arrived at Chester's home shortly thereafter, Edwards described Curtis and then told them which way he had gone. Approximately five minutes later, the police returned with Curtis.

Edwards testified further that on April 28, 2002, she set the security alarm after Chester left for work at approximately 5:00 a.m. and then went to sleep. Several hours later, she noticed that the living room and dining room furniture had been slashed and called the police. Edwards subsequently realized that her keys and leather jacket were missing. On cross-examination, Edwards testified that she did not see Curtis inside Chester's home on April 28, 2002.

Office Joseph Kwiatkowski testified that on March 1, 2002, at about 4:15 p.m., he was dispatched to Chester's home. Edwards told him that defendant had come to the home in violation of an order of protection. Shortly thereafter, Kwiatkowski and his partners found Curtis walking approximately five blocks from Chester's house. After verifying Curtis's identity with Edwards, Kwiatkowski placed Curtis under arrest.

Detective Jasica testified that at about 4:00 p.m. on April 30, 2002, he and his partners were dispatched to Chester's home to investigate ongoing domestic and telephone threats. After Chester informed them of what had transpired, they developed a plan whereby the police would intercept a meeting between Curtis and Chester. Chester would park at the meeting area designated by Curtis, wait for him to arrive, and, upon seeing him, put her car in reverse and drive away from the area. After Curtis called again, Chester told Jasica that Curtis wanted to meet her at Lafayette and 95th in fifteen minutes. Once at the designated area, Jasica saw Curtis exit the passenger side of a van at that intersection, look in Chester's direction, and wave to her. Curtis then began to walk toward Chester and motioned for her to come over to him. Chester put her car in reverse and drove away from the area. Jasica then placed Curtis under arrest.

On cross-examination, Jasica indicated that Curtis had a backpack with him when he was arrested, but that he could not recall what it contained. On redirect, Jasica testified that on April 30, 2002, Chester told him that defendant had threatened to kill her and told her he would return the items he stole from her home if she would meet with him.

Officer Dorinda Rodgers testified that on April 30, 2002, she was working at the front desk in the police station when Chester arrived. Rodgers testified that Chester was shaking, "very upset" and "hysterical" when she made her report.

### Discussion

*Ground 1*

In his first claim, Curtis argues that the evidence presented by the prosecution was insufficient to establish beyond a reasonable doubt that he committed the offenses of telephone harassment and aggravated stalking. Specifically, Curtis argues that because there were no

5

telephone records presented at his trial that would provide objective evidence that he placed calls to Chester on March 1 or April 30, 2002, his conviction rested exclusively on Chester's and other witnesses' testimony. Curtis also apparently argues that his actions could not, as a matter of law, satisfy the elements of aggravated stalking. He argues that because the April 30, 2002 encounter with Chester was an agreed meeting, his presence was "invited" and thus could not satisfy the offense's surveillance element.[1]

Respondent argues that there was sufficient evidence for a rational trier of fact to determine beyond a reasonable doubt that the prosecution had proved the essential elements of the offense. Respondent also argues that to the extent Curtis's first claim is that the state court was wrong about what the Illinois stalking statute requires, the claim is not cognizable on federal habeas review.

Under the amendments to the federal habeas corpus statute made by the Antiterrorism and Effective Death Penalty Act of 1996, if the state court has adjudicated the merits of a constitutional claim, the writ is available only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a

---

[1] In his petition, Curtis asserts that "an analysis of cases discussing surveillance reveals" common threads, notably that "the defendant's presence is uninvited, in that the victim did not want or expect to see the defendant." Pet. at 10. Curtis does not identify any of these cases, however, or argue that the courts deciding them regarded the "uninvited" aspect of defendants' behavior to be essential to a finding that surveillance had occurred.

question of law or if the state court decides a case differently than [the Supreme] Court has on a materially indistinguishable set of facts." *Williams v. Taylor*, 527 U.S. 362, 405 (2000). An "unreasonable application" exists when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 412-13. To meet this test, the habeas petitioner must show that the state court applied Supreme Court precedent to the facts of his case in an objectively unreasonable way, and not merely incorrectly. *E.g., Price v. Vincent*, 538 U.S. 634 (2003); *see also Lockyer v. Andrade*, 538 U.S. 63 (2003) ("objectively unreasonable" standard is more deferential to state courts than "clear error" standard).

The relevant Supreme Court precedent in cases where the petitioner challenges the evidence used to convict him is *Jackson v. Virginia*, 443 U.S. 307 (1979). In that case, the Supreme Court held that on federal habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Thus, the Court must decide whether the state court's determination that a rational jury could have convicted Curtis of telephone harassment and aggravated stalking was contrary to, or involved an unreasonable application of, the *Jackson* standard.

The Court agrees with respondent that the state court did not contravene or unreasonably apply *Jackson*. On direct appeal, Curtis focused his claim as to the sufficiency of the evidence on a question of law—his April 30, 2002 encounter with Chester was not "uninvited" and therefore could not have been surveillance. It is clear, however, that the court accepted the evidence that Curtis called Chester on March 1, 2002 and then sought her at her home. It also accepted the

evidence that Curtis called Chester on April 30 and threatened to kill her if she did not let him see their daughter. The same goes for evidence of calls later that day, including the one in which Curtis and Chester arranged to meet while police detectives stood by in Chester's home. Finally, the court accepted the testimony of Chester and Jasica about the meeting itself, at which Curtis approached Chester's car and signaled to her before he was arrested by the police officers waiting there. It follows, therefore, that the Illinois Appellate Court believed that a rational trier of fact could have determined beyond a reasonable doubt that Curtis's conduct met the essential elements of telephone harassment and aggravated stalking. This Court cannot conclude that this determination, based on the evidence, was an objectively unreasonable application of *Jackson*.

Respondent rightly states that the question whether Curtis's actions could, as a matter of law, satisfy the surveillance element of the Illinois stalking statute is not a proper one for federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 63 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions") (*citing Lewis v. Jeffers*, 497 U.S. 764 (1990)). Curtis's challenge to the sufficiency of evidence fits this description, at least in part: he argues that "[e]ven assuming the credibility of Chester's testimony [about Curtis's phone calls to her], the alleged acts are insufficient evidence to establish [an] act of surveillance as required under the stalking statute." Pet. at 8. This language shows Curtis continues to resist the determination of Illinois law made by the trial court and upheld by the Illinois Appellate Court. To the extent he argues this, the Court cannot review his claim that the state did not prove its case.

In any event, to the extent it raises an issue for which federal habeas relief is available, Curtis's claim as to the sufficiency of the evidence underlying his conviction fails on the merits.

***Ground 2***

Curtis next argues that (1) the trial court interfered with the jury's fact-finding function by answering a question about what the statute requires, (2) the court's answer in effect directed a guilty verdict against him, and (3) the court's answer "gave the jurors the wrong interpretation of the law regarding surveillance." Pet. at 11.

During its deliberations following Curtis's trial, the jury sent a note to the court asking the following question: "In defining 'surveillance,' is there a time duration and/or distance limitation on the phrase 'remain outside a vehicle?'" Over the objection of Curtis's counsel, the trial court responded as follows:

> That with reference to the phrase remain present, there is no legal requirement that the defendant must stop, stay, or wait for a minimum or maximum amount of time outside of a vehicle before his behavior may be found to be surveillance under the stalking statute.
> However, you should consider this response to your question in conjunction with the definition instruction you received as to the phrase "places a person under surveillance."

*People v. Curtis*, No. 1-03-1542, slip op. at 10 (Dec. 9, 2004). The Court can dispose easily of Curtis's contention that the trial court gave the jury "the wrong interpretation" of the Illinois stalking statute. This claim repeats his view that his actions could not, as a matter of law, qualify as surveillance. What Illinois law requires, however, is not properly a part of this Court's habeas inquiry. *See Estelle*, 502 U.S. at 63.

Turning to the first two contentions, Curtis argues that the question whether his conduct ran afoul of the stalking statute was one the jury could have and should have answered on its own. He focuses specifically on the duration of his encounter with and proximity to Chester on April 30, 2002. The trial court's original instruction, he argues, was sufficiently clear about what

the law required for both of these variables. Therefore, the trial judge committed error under Illinois law by answering the jurors' question. *See People v. Millsap*, 189 Ill. 2d 155, 160, 724 N.E.2d 942, 945 (2000). Further, Curtis claims the trial court's response that the statute had no minimum requirements for either time or distance ensured that the jury would find him guilty: "By saying that *any* amount of time . . . constitutes surveillance, the court was telling the jury that it could no longer find Mr. Curtis' acts were *not* surveillance." Pet. at 14.

On direct appeal, the Illinois Appellate Court upheld the trial court's decision to answer the jury question. It also rejected Curtis's argument that the response essentially directed a guilty verdict, because the trial court had merely answered a legal question about what a key statutory phrase ("remain present outside the vehicle") required, without applying it to the evidence in the case or telling the jury how to do so. Respondent argues that the state court's conclusion was not contrary to or an unreasonable application of Supreme Court precedent.

Respondent points to two cases involving questions put to the trial judge by deliberating jurors. The first, *Bollenbach v. United States*, 326 U.S. 607 (1946), stands for the proposition that when a jury makes explicit its confusion about a question of law, especially when the instruction that is the source of confusion misstates the law, the trial court must answer with the aim of clearing away the jury's doubts "with concrete accuracy." *Id.* at 612-13. The second, *Weeks v. Angelone*, 528 U.S. 225 (2000), teaches that a court does not violate a defendant's rights by referring the jury to a specific part of the original instructions in response to a request for clarification. These cases and *Boyde v. California*, 494 U.S. 370 (1990), typically make up the analytical framework when habeas petitioners challenge state courts' handling of jury requests for clarification. *E.g., Beardslee v. Woodford*, 358 F.3d 560 (9th Cir. 2004) (finding,

based on *Bollenbach* and *Angelone*, that habeas petitioner's right to a fair trial was violated by state court's improper refusal to answer jury's question); *Johnston v. Luebbers*, 288 F.3d 1048 (8th Cir. 2002). Curtis's claim must be measured against these Supreme Court cases pursuant to section 2254(d).

Curtis fails to show that the state court reached a result that was contrary to, or an unreasonable application of, these precedents. *Bollenbach* in essence imposes a duty to clear up confusion on the jury's part created by a vague or mistaken instruction from the trial judge. Curtis's argument about a "temporal dimension" of the stalking statute notwithstanding, Pet. at 15, the trial court's initial instruction was not vague or mistaken. Moreover, even if the instruction had misstated the law, because the jury's confusion was explicit (it asked a question), the constitutional error would have been *not* answering it. Having answered the question, the state court cannot be said to have contravened or the rule in *Bollenbach* or applied it in an objectively unreasonable way. *Angelone* is inapplicable because the issue Curtis raises relates to a supplemental instruction rather than a reference back to a specific point in the original instructions.

Curtis's claim that the trial court's response in effect directed a guilty verdict can also be answered here. A trial judge must not direct the jury to enter a guilty verdict, even where the evidence of guilt is overwhelming. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572-73 (1977). The trial court's answer to the jury and the appellate court's upholding of it are not contrary to and do not involve an unreasonable application of that rule. The trial court did not instruct the jury to return a guilty verdict. Though its interpretation of what the statute requires may have made Curtis's conviction more likely, it did not completely remove the

11

question of Curtis's guilt from the jury's hands.  Though the jury may have determined before

posing the question what Curtis's conduct was, in its question it merely sought guidance on what

precisely the legal parameters were.  Curtis's claim for relief based on this contention therefore

fails.

### *Ground 3*

Curtis next asserts that the state trial court allowed improper bolstering of Chester's

credibility through Detective Jasica's testimony about prior consistent statements Chester had

made to him.  Jasica's testimony about these statements, Curtis asserts, does not fit within either

of two relevant exceptions to Illinois's hearsay rule and thus was inadmissible.  Curtis suggests

that Chester's testimony on its own is weak at best because Jasica testified he did not himself

hear Curtis's voice over Chester's phone and because the state failed to produce phone records

showing it was Curtis who called Chester.  Thus, Curtis argues, the state court decision was

contrary to and involved an unreasonable application of Supreme Court precedent and was based

on an unreasonable determination of the facts in light of the evidence presented.

Curtis concedes that his counsel failed to object to Jasica's testimony at trial and in a

post-trial motion.  He blames this on "conspiratorial actions" between his counsel, the state court,

and the prosecution, and he argues that he cannot be responsible for the failure.  Pet. at 19.

Curtis also argues that the plain error doctrine should apply, opening the door for federal habeas

review of the issue.  He contends both grounds for plain error apply to his case:  the evidence at

his trial, he says, was closely balanced because the state's case "largely hinged on Chester's

credibility" and there was a significant risk of an unfair trial.

Respondent argues that because the state appellate court held Curtis forfeited this claim

by failing to raise it at trial or in a post-trial motion, federal habeas relief is foreclosed.

Respondent further argues that no ground for avoiding forfeiture exists. If Curtis's claim that his

trial counsel refused to object to the testimony because of a conspiracy with the state court and

prosecution is read to raise a question of ineffective assistance of counsel, respondent contends,

that claim also is forfeited. Therefore, it cannot excuse the default. Finally, respondent argues,

Curtis's claim should fail on the merits, because state evidentiary issues are generally outside the

scope of habeas review unless there is a risk that the state court's error was so serious that an

innocent person was convicted.

The Court agrees with respondent that Curtis's claims are defaulted, and that to the extent

he seeks to excuse the default based on his trial counsel's "intentional misconduct," he raises an

ineffective assistance issue that is likewise defaulted.

To avoid procedural default, a federal habeas petitioner must show that he raised his

constitutional claims during state proceedings at the time and in the way dictated by the state's

procedural law, and that the state court did not dispose of these claims on an independent and

adequate state-law ground. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996) (citing *Coleman

v. Thompson*, 501 U.S. 722, 729-30 (1991)). If the petitioner does not properly raise his

constitutional claims in state court, then the state court's judgment is supported by an

independent and adequate state procedural ground, and federal habeas relief is unavailable.

*Coleman*, 501 U.S. at 729-30 (citing *Wainright v. Sykes*, 433 U.S. 72 (1977)). The Supreme

Court has held that "'[o]ut of respect for finality, comity, and the orderly administration of

justice, a federal court will not entertain a procedurally defaulted constitutional claim in a

petition for habeas corpus absent a showing of cause and prejudice to excuse the default" or a

showing that "the alleged constitutional error has resulted in the conviction of one who is actually innocent." *Dretke v. Haley*, 541 U.S. 386, 388 (2004).

The state appellate court held that Curtis's failure to object to Jasica's testimony at trial or in a post-trial motion amounted to waiver of this claim under Illinois's forfeiture rule. (Respondents correctly point out that the Seventh Circuit has upheld Illinois's forfeiture rule as an independent and adequate state procedural ground that bars habeas relief. *Miranda v. Leibach*, 394 F.3d 984, 994-95 (7th Cir. 2005).) The state appellate court also held that the plain error doctrine, which provides an exception to the waiver rule, did not apply to Curtis's case because the evidence as to surveillance (the only element of stalking on which Curtis mounted a defense) was not closely balanced, and no significant right was implicated by the admission of the testimony Curtis now seeks to challenge. Thus, Curtis's claim is procedurally defaulted under Illinois law, and this Court may not review it absent a basis to excuse the default.

Curtis's assertion that his default is the result of a conspiracy between his appointed trial counsel, the state court, and the prosecution amounts to a claim of "cause and prejudice" for excusing procedural default. Although Curtis provides no support for his conspiracy claim, the Court will give him the benefit of the doubt and treat this as a claim of ineffective assistance of counsel. But because Curtis's claim of ineffective assistance of counsel is likewise defaulted, as the Court explains below, it cannot be a cause of his default within the meaning of the exception. *See Murray v. Carrier*, 477 U.S. 478, 489 (1986).

***Ground 4***

Curtis next claims that he was arrested without probable cause or a warrant, did not receive a probable cause determination within forty-eight hours, and was charged with

aggravated stalking and other offenses under an indictment that "was the product of fraud and perjury." Also under this heading, Curtis claims his Sixth Amendment right to a speedy trial was violated because he was not indicted until thirty-six days after his arrest.

Respondent cites to the state appellate court's decision on Curtis's appeal from the dismissal of his post-conviction petition, in which the court found probable cause to arrest Curtis existed. Respondent further argues that federal habeas relief is not available, without more, based on a Fourth Amendment false arrest claim, pursuant to *United States v. Crews*, 445 U.S. 463 (1980), and that habeas review of Fourth Amendment claims is unavailable where the state court has given the petitioner a full and fair opportunity to litigate the claim, under *Stone v. Powell*, 428 U.S. 465 (1976). Respondent argues Curtis had this opportunity because the state court ruled on the merits of his Fourth Amendment claim rather than relying exclusively on Curtis's procedural default, as it could easily have done. Finally, petitioner argues Curtis cannot show that the state court's resolution of his Fourth Amendment claim was contrary to or an unreasonable application of Supreme Court precedent. To support this argument, respondent cites Supreme Court cases that have approved of criminal prosecutions despite the apparent wrongfulness of the defendant's arrest.

The Court agrees with respondent that Curtis's Fourth Amendment claim affords no grounds for federal habeas relief. Curtis insists that the police lacked probable cause to arrest him on April 30, 2002. Even if the Illinois appellate court was wrong about the existence of probable cause, however, "[a]n illegal arrest . . . is an insufficient ground, standing alone, upon which to vacate a conviction in federal habeas proceedings." *Sanders v. Israel*, 717 F.2d 422, 423 (7th Cir. 1983) (citing *Crews*, 445 U.S. at 474). Therefore, habeas relief is unavailable to

Curtis on this claim.  The Court also agrees with respondent that Curtis had a full and fair opportunity to litigate this claim in state court, which would also foreclose habeas relief were it not already precluded.  Finally, the Court agrees with respondent that the state court did not reach a result that was contrary to or that unreasonably applied Supreme Court precedent.  Even assuming Curtis's arrest was unlawful—an argument for which the state court found no support when, "notwithstanding waiver," it examined the claim's merits—it does not follow that his conviction was invalid.  The Supreme Court held in *Crews* that "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *Crews*, 445 U.S. at 474 (citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)).

Curtis's claim that his indictment was the result of perjury by police officers is not developed or supported.  Although it is unclear, Curtis appears to repeat his earlier argument that it was legally impossible for him to have committed the offense of aggravated stalking.  Because he could not have committed the offense, Curtis seems to reason, he could not have been charged unless some one perjured himself.  Curtis states in his petition that, after his arrest, "[t]he police officer then manufactured and fabricated an alleged offense, and characterized the event as an aggravated stalking without any violation of the statutory provisions. . . ."  Pet. at 24.  (Curtis reinforces this impression by reiterating his argument that Chester agreed to meet with him and therefore his encounter with her could not have been surveillance.)  Because Curtis does not offer any support for his claim that the police perjured themselves in connection with his indictment, and because the Court in any event understands this claim to repeat an earlier argument it has already addressed, the Court need not address the claim.

Respondent has failed to address Curtis's speedy trial claim at all.  Because respondent

has not argued that the claim is procedurally defaulted, the Court will evaluate its merits. Curtis asserts that after his arrest on April 30, he was charged with aggravated stalking and held until May 22, at which time "the state dismissed all the charges [but] still held [him] in custody." Pet. at 24. Curtis further contends that the state did not obtain a superseding indictment until June 5.

Even assuming this version of events is accurate, Curtis is not entitled to habeas relief on the grounds that his Sixth Amendment rights were violated. Curtis's right to a speedy trial under that amendment attached at the time of his arrest. *United States v. Marion*, 404 U.S. 307, 320-21 (1971) ("either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections of the speedy trial provision of the Sixth Amendment. Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge."). His claim, however, fails to clear the initial hurdle imposed by *Barker v. Wingo*, 407 U.S. 514 (1972). *Barker* requires courts to examine four factors when a defendant argues his speedy trial rights were harmed: the length of the delay, the reason for it, the defendant's assertion of the right, and prejudice to him. *Id.* at 530. The first of these is a "triggering mechanism": "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* Though the Court in Barker insisted that "because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case," it is clear that in this case, the thirty-six days for which Curtis claims he was held between his arrest and the filing of his superceding indictment is not a presumptively prejudicial delay. Typically, a delay must approach one year to trigger the full *Barker* analysis. *United States v. Ward*, 211 F.3d 356, 361 (7th Cir.2000) (citing *Doggett v. United States*, 505

U.S. 647, 651 (1992)). Delays short of a year but well in excess of the thirty-six day span in this case have been held not to be presumptively prejudicial. *E.g., Hogan v. McBride*, 74 F.3d 144, 145 (7th Cir. 1996) (eight-month delay not presumptively prejudicial); *Owens v. Frank*, 394 F.3d 490, 504 (7th Cir. 2005) (holding, on habeas petition raising speedy trial claim, that Wisconsin court's determination that seven-month delay was not "presumptively prejudicial" was not an unreasonable application of *Barker*). Therefore, Curtis's speedy trial claim fails.

### Ground 5

Curtis's fifth claim essentially repeats his first, to the effect that the state failed to prove every element of the offenses for which he was convicted in state court. The Court has already addressed this argument and need not repeat its disposition of the argument here.

### Ground 6

Curtis next claims that both his trial and appellate counsel provided ineffective assistance that fell below the constitutionally required minimum. He contends, among other things, that his trial counsel failed to call witnesses Curtis identified to her and whose testimony would have exonerated him; withheld exculpatory documents Curtis gave her; failed to object to inadmissible evidence; and refused to argue theories Curtis urged on her. Curtis also repeats his contention that his trial counsel's failure to put on an effective defense was due to a conspiracy between the attorney, the trial judge, and the prosecution to secure Curtis's conviction. Curtis says his appellate counsel gave ineffective assistance by failing to raise on direct appeal defects in the charging instruments and the issue of his trial counsel's ineffective assistance.

Respondent argues that Curtis's claims as to both counsel are procedurally defaulted. Curtis did not raise his trial counsel's effectiveness on direct appeal. Instead, he waited until his

postconviction petition to do so.  Curtis failed to assert a claim with respect to his appellate counsel until even later, on appeal from his post-conviction petition's dismissal.  Respondent argues that to the extent Curtis contends his waiver of his claim that trial counsel was ineffective is excused because it was caused by his appellate counsel's failure to raise the issue, this claim should fail because appellate counsel is not required to raise meritless issues.  Respondent notes the issues Curtis's appellate counsel did raise had much greater support than those Curtis now says he should have raised.  Curtis has not produced evidentiary support, such as an affidavit from his claimed alibi witness, for the points he says his appellate counsel inappropriately omitted.

The Court agrees with respondent that Curtis's claims of ineffective assistance of counsel are procedurally defaulted.  Curtis failed to raise the issue of his trial counsel's ineffectiveness on direct appeal.  He did raise it in his post-conviction petition in state court.  Doing so would appear to avoid a default pursuant to an exception to Illinois's forfeiture rule that applies when the grounds for an ineffective assistance claim were not contained in the record.  *People v. Kellerman*, 342 Ill. App. 3d 1019, 804 N.E.2d 1067 (2003); *Reese v. Peters*, 926 F.2d 668 (7th Cir. 1991); *Perry v. Fairman*, 702 F.2d 119, 122 (7th Cir. 1983) (allegations that "trial counsel interviewed favorable witnesses and discovered exculpatory evidence, but failed to call the witnesses to testify and failed to make use of the valuable evidence" were matters outside the scope of the record, opening the way for post-conviction relief under the Illinois statute).  On Curtis's appeal from dismissal of his post-conviction petition, however, the state court held that his failure to raise the ineffective assistance claim as to trial counsel on his direct appeal meant it was procedurally barred.  *People v. Curtis*, No. 1-04-1781, slip op. at 5 (Ill. App. May 10, 2006).

19

It also held that Curtis could not avoid the default by arguing this failure meant his appellate counsel likewise was ineffective, because Curtis failed to put the latter claim in his post-conviction petition. *Id.* The court did not discuss the inapplicability of the waiver rule to claims of ineffective assistance when the factual basis for the claim is not contained within the original trial court record and therefore could not have been considered on direct appeal.

The state court's failure to address the exception to Illinois's waiver rule raises the question whether an independent and adequate state procedural ground precludes habeas review by this Court. Federal courts considering habeas petitions do not automatically defer to a state's argument that a habeas petitioner's claims are procedurally defaulted. In *County Court of Ulster County, N. Y. v. Allen*, 442 U.S. 140 (1979), the Supreme Court held that the district court properly considered the merits of state prisoners' habeas petitions, despite the state's objection that the prisoners' constitutional claim was procedurally barred because the prisoners had raised it for the first time only after they were convicted at trial. *Id.* at 150-151. In other words, the requirement of an independent and adequate state ground imposes "federal limits on a state's ability to construct procedural rules, the failure to comply with which precludes consideration of the merits of a claim in a federal habeas corpus proceeding." *Williams v. Lane*, 826 F.2d 654, 659 (7th Cir. 1987).

Yet there is no sign here that the state court's finding that Curtis's ineffective assistance claims were procedurally defaulted fails this test—notwithstanding its silence about the exception to the waiver rule. "To conclude that the procedural default constitutes an independent basis for the state court's ruling, we must be convinced that the last state court to consider the question actually relied on procedural default as the basis for its decision." *Braun v. Powell*, 227

F.3d 908, 912 (7th Cir. 2000).  The state court's explicit holding that Curtis's ineffective

assistance claims were procedurally defaulted easily meets this prong of the test.  For a

procedural default to be an adequate basis for a state court's ruling, it must be "applied in a

consistent and principled way; it cannot be employed infrequently, unexpectedly, or freakishly."

*Id*. at 912 (citing *Thomas v. McCaughtry*, 201 F.3d 995, 1000 (7th Cir.2000)) (internal quotation

marks omitted).  Though ignoring a routinely noted exception to the waiver rule for ineffective-

assistance claims may seem remiss, it does not rise to the level of lightning-strike

"freakish[ness]" that would allow Curtis to avoid default.

Finally, the state court held that in any event, neither of Curtis's claims of ineffective

assistance had any support and therefore would likely fail on the merits, procedural bars aside.

*Id*. at 5-6.  Even if Curtis's claim were not procedurally defaulted, the Court agrees with the state

court that Curtis's ineffective assistance claims would fail on the merits because they lack

support.

Therefore, habeas relief is unavailable on Curtis's ineffective assistance claims.

***Ground 7***

Curtis next argues that his trial counsel conspired with the state court and the prosecution

to convict him.  The Court has already held that to the extent Curtis's contention that his trial

counsel engaged in intentional misconduct to further this putative conspiracy amounts to a claim

of ineffective assistance of counsel, that claim is procedurally defaulted.  To the extent that

Curtis's conspiracy claim raises a separate constitutional issue, the Court agrees with respondent

and the state appellate court that it lacks any support.

**Conclusion**

For the reasons stated above, the Court denies Curtis's motion to appoint counsel [docket no. 16] and also denies his petition for a writ of habeas corpus.  The Clerk is directed to enter judgment in favor of respondent.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 1, 2007